UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA            :

   -against-                                          :          05 CR. 1185 (PAC)

SEKOU BRANCH,                                 :          <u>OPINION AND ORDER</u>

                    Defendant.            :

------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Sekou Branch ("Branch"), previously convicted of a felony offense in New York Supreme Court, moves to suppress a 9mm pistol and one pound of marijuana found in his possession on October 7, 2005, that form the basis for the charge in this case,[1] and the statements he made following his arrest that day. Branch argues that the officers who found the contraband lacked sufficient cause to detain and search his property, and that he was not properly advised of his rights. He alleges violations of his rights under the Fourth and Fifth Amendments. An evidentiary hearing on Defendant's motion was held on August 1 and August 2, 2006.

For the reasons set forth below, the motion to suppress the gun and the marijuana and the motion to suppress the oral statements are denied.

**I**

There is little the Government and the Defendant agree on, except that a car accident occurred at approximately 9:00 p.m. on October 7, 2005 in the Bronx at the

---

[1] Defendant is charged in a one count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

intersection of the Grand Concourse at 188th Street.  Defendant and his colleague, Eric Irizarry ("Irizarry"), were in a car owned by Defendant's girlfriend, driven by Irizarry, heading south on the Grand Concourse.  Irizarry made a left-hand turn onto East 188th Street, but was hit by a livery car driving north on the Grand Concourse service or access road.  The force of the collision spun the Branch-Irizarry vehicle around, and it ended up on the Northeast corner of 188th Street, half in the street and half on the sidewalk, alongside a subway entrance.  When the car came to rest, it was facing west, and directly across the street from an unmarked New York Police Department passenger van parked on the Southeast corner of 188th Street and the Grand Concourse.

Detective Richard Wells ("Wells") was in the driver's seat of the van and Detective Anthony Casilla ("Casilla") was the front seat passenger.  They were part of a police buy and bust operation which was operating further east on Valentine Avenue and East 188th Street.  Wells and Casilla were to collect and hold in the passenger van anyone arrested in the buy and bust operation.

Shortly after the Branch vehicle came to rest, Wells said he noticed Branch get out of the car, go to the trunk of the vehicle and remove two bags.  Branch also testified that he went to the rear of the car, opened the trunk and removed two bags, one containing a laptop computer, and the other, a large plastic shopping bag.  It is uncontested that the shopping bag contained a box holding a 9mm pistol, and one pound of marijuana, wrapped in cellophane.

From this point forward, the police officers and Branch offer sharply different versions of what Branch did after he removed his bags from the trunk.

Branch maintains that having removed the bags from the trunk, he stood along side the car with the bags at his side. He did not walk away, or enter the subway, and the bags never left his side. Under this version, the police officers had no reason to arrest him or to open the shopping bag and search its contents.

The Government's version is that after removing the bags from the trunk, Branch walked away from the vehicle, heading east on 188th Street, for a short distance.[2] Then he turned around, and walked back and entered the subway, leaving the plastic bag, containing the gun and marijuana, at the top of the subway steps. According to the Government, the police had reason to stop Defendant, and examined the contents of the bag which had been abandoned.

## II.    DETECTIVE WELLS'S TESTIMONY

Wells testified that at approximately 9:00 p.m. on October 5, 2005, he and Casilla were stationed at the corner of 188th Street and the Grand Concourse in an unmarked prisoner van for a narcotics buy and bust operation. (Wells, Tr. 5-8.)   Wells observed the car accident at that intersection, and saw Branch exit the car, walk to the rear of the car, open the trunk, and remove a shoulder bag and plastic shopping bag. (Wells, Tr. 11-12.)  Irizarry got out and walked away from the car in the direction of the livery cab driver, who was still on the Grand Concourse access road.  (Wells, Tr. 13.) Wells instructed Casilla to radio the field team about the accident and to alert them that an individual was walking towards them. (Wells, Tr. 13-14.)   After removing the two bags, Branch walked away from the car, stopped after walking a short distance, reversed his direction, and walked back towards the accident site. (Wells, Tr. 14.)  Wells, wearing

---

[2] The distance varies between 15-30 feet.  Branch makes much of this variation, but it is not significant.

3

a jacket with prominent police insignia, got out of the van, crossed 188th Street from the south side to the north side, and made eye contact with Branch. (Wells, Tr. 14.) Branch's pace quickened after the eye contact, and Wells radioed for backup. (Wells, Tr. 14.)

Branch then walked past the accident site, quickly turned around the green gate leading down to the subway, dropped the plastic bag he was holding on the top stair, and went down the stairs to the subway. (Wells, Tr. 15.) Wells then radioed that the individual was "going in the hole," which is police jargon for going into the subway. (Wells, Tr. 15.) Wells went down the subway steps with his police shield out and his service revolver in his hand. (Wells, Tr. 15-19.) He saw Branch standing on the landing at the bottom of the first flight of steps and ordered him to come back up the stairs. (Wells, Tr. 18-19.) Branch asked what was going on, to which Wells replied that he had been in a car accident and that he needed to come up from the subway. (Wells, Tr. 19.) Branch complied, and Wells escorted him back to the car he had been riding in. (Wells, Tr. 19.)

Once they emerged from the subway, Wells turned Branch over to Detective Vasquez ("Vasquez"), who had arrived on the scene. (Wells, Tr. 20.) Wells then returned to the subway entrance where he retrieved the plastic bag that he observed Branch drop, and brought it back to the car. (Wells, Tr. 20.) While lifting the bag onto the car, Wells noticed a strong odor of marijuana. (Wells, Tr. 21.) He reached into the bag, removed a shoebox that contained marijuana wrapped in cellophane. (Wells, Tr. 21-23.) Wells ordered Detective Vasquez to put Branch and Irizarry in handcuffs. (Wells, Tr. 22.) Upon further search of the shoebox, Wells found a firearm wrapped in a plastic

bag. (Wells, Tr. 22 .) Wells and Casilla then transported Branch and Irizarry to the 48th Precinct for processing. (Wells, Tr. 25.)

### III.      CORROBORATION OF DETECTIVE WELLS'S TESTIMONY

Vasquez and Detective Bennett ("Bennett") arrived on the scene as Branch was being taken from the subway. Obviously, neither one observed whether Branch had or had not walked away from the vehicle. Both testified credibly, however, that they received radio transmissions indicating that there had been a car accident at 188th Street and the Grand Concourse, and that one of the car's occupants was going down into the subway. (Bennett, Tr. 93 & Vasquez, Tr. 120-21.) This corroborates Wells's testimony that Branch walked down into the subway, rather than remaining alongside the car, as Branch testified.

Vasquez also testified that upon arriving on the scene, he observed Wells with Branch, approximately four feet from the car, walking in the direction of the car, where Vasquez then took control of him. (Vasquez, Tr. 122.) This corroborates Wells's testimony that he escorted Branch from the subway to the car. Vasquez further testified that after taking control of Branch, Wells left his side, and then reappeared a short time later, at which time Vasquez noticed a strong smell of marijuana. (Vasquez, 123.) This corroborates Wells's testimony that subsequent to turning Branch over to Vasquez, Wells retrieved the plastic bag from the subway steps, placed it on the car, and searched it.

Bennett testified that when he arrived on the scene, he saw Vasquez holding Branch on the side of the car and Casilla holding Irizarry on the hood of the car. Wells was "walking away, towards the subway system." (Bennett, Tr. 94.) Bennett then provided assistance to Vasquez, and had his back turned to the subway. (Bennett, Tr.

94.) The next time he saw Wells, Wells came back to the car and placed a shopping bag on the car and began to search it.  (Bennett, Tr. 94.)  This further corroborates Wells's testimony that after handing Branch over to Detective Vasquez, he went back to the subway to retrieve the plastic bag.

Branch attacks Wells's testimony in light of a determination by the New York Police Department Trial Bureau that Wells lacked credibility in a proceeding to determine whether he had illegally stopped and frisked a complainant.  Wells was found guilty and forfeited five days vacation pay. (Wells, Tr. 27-28.)  The finding of a lack of credibility in that unrelated proceeding does not mean that Wells's testimony lacked veracity in this case.  See U.S. v. Cruz, 894 F.2d 41, 43 (2d Cir. 1990) (finding of lack of credibility in one unrelated matter does not mean that witness lacked veracity generally; the prior finding was not relevant to the assessment of credibility in a subsequent proceeding).  See also U.S. v. Lawes, 292 F.3d 123 (2d Cir. 2002).  The Court has closely scrutinized Wells's testimony and finds it credible, especially as corroborated in its crucial details by Vasquez and Bennett.

Branch attempts to make much of the less than stellar handling of police property vouchers filled out by Bennett that identify the evidence seized at the scene, its location and possessor.  The vouchers identify the plastic bag, containing the firearm and marijuana, as belonging to Irizarry, having been found "on the ground next to the defendant."  Bennett, however, testified that Wells told him he had found the items "on the ground" and that Bennett assumed that meant on the ground next to the defendant. (Bennett, Tr. 101.)  The Court credits the testimony of Bennett.

The Court assigns no weight to the testimony of Casilla and Irizarry. Based on their testimony, neither was in any position to observe the crucial details of what Branch and Wells did. Irizarry testified that after the accident, he walked over to the livery cab, engaged in an argument with the driver, and "can't say exactly what [Branch] was doing." (Irizarry, Tr. 189-90.) Casilla testified that after the accident, he was busy trying to prevent an altercation between Mr. Irizarry and the livery cab driver, and consequently did not see either Branch or Wells again until Wells began searching the plastic bag at the car. (Casilla, Tr. 153-55.)

## IV.   DEFENDANT BRANCH'S TESTIMONY

Branch's account of what happened after the accident differs significantly from Wells's testimony. He testified that after the cars collided, he sat in the car for about thirty seconds trying to figure out what had happened. (Branch, Tr. 214.) Irizarry got out of the car and walked toward the other car involved. (Branch, Tr. 215.) Branch then exited the car, walked to the trunk, and removed the laptop bag and the plastic shopping bag. (Branch, Tr. 215.) Branch explained that he wanted to remove any items of value because he was concerned the car might explode since it was smoking and leaking fluids. (Branch, Tr. 224-25.) He also stated that he wanted to remove all valuable items in case a tow truck arrived. (Branch, Tr. 224-25.)

Branch testified that immediately after he removed the bags from the trunk, he walked to the passenger's side of the car, set the bags on the ground near his feet, and stood beside the car. (Branch, Tr. 215-16.) Branch denied ever walking eastbound on 188th Street or walking toward or into the subway entrance. (Branch, Tr. 216-17.) As he stood next to the car, he observed Irizarry arguing with the livery cab

7

driver, and he yelled to Irizarry to calm down.  (Branch, Tr. 217.)  As he continued to stand next to the car, Wells approached him and told him to put his hands on the car.  (Branch, Tr. 217.)  Wells asked why he removed the bags from the trunk, and Branch replied that he was concerned about the car exploding.  (Branch, Tr. 218.)  Another officer approached and began searching Branch, and the two bags at his feet.  (Branch, Tr. 218.)  Wells then found the marijuana wrapped in cellophane and another officer later found the firearm; both were in the plastic bag.  (Branch, Tr. 219-20.)

Branch's account of what happened makes little sense.  Branch's stated reason for taking the bags out of the trunk cannot be reconciled with his actions immediately afterward.  He claimed he was concerned about the car "exploding," so he removed "all valuable items," yet then remained standing next to the car.  The only explanation he offered for why he did not move away from the car if he was afraid of an explosion was that it was "an oversight" not to move.  (Branch, Tr. 226-27.)  Nor is it believable to remove bags because he was waiting for a tow truck, which he did not call.  Similarly, in light of the concern about the "explosion," Branch did not call the fire department or tell the police of his concerns.  The Court finds that Branch's account of the post-accident events is not credible.

Branch also testified that despite being a felon in possession of a firearm and a pound of marijuana, and notwithstanding his parole status, he was not nervous about the police arriving at the scene of the accident.  (Branch, Tr. 237-39.)  Knowing that police would investigate, with knowledge of his own parole status, and the fact that he possessed contraband, it is far more likely that Branch would walk away, rather than simply stand around.

Branch testified that he was more concerned that Irizarry, whom he identified as having "a temper", would "go off" on the livery cab driver. (Branch, Tr. 239-40.)  Despite this concern, however, he testified that he did not walk over to Irizarry or go to the scene of the accident, as would be normal.  Instead, he stayed alongside the car, he said, yelling to his friend to calm down.  In short, Branch gave no credible explanation as to why he would remain next to the car during the entire incident.

## V.  SUPPRESSION OF BRANCH'S ORAL STATEMENT

After the arrest, at the precinct, Branch made several statements to Irizarry, which Wells overheard.  Branch stated something to the effect of "I can't believe I got into a car accident with that stuff in the car." (Wells Tr. 26.)  Second, in the cellblock, Branch said to Irizarry something to the effect of "don't worry, I got this; this isn't you; it's all me." (Wells, Tr. 26.)  Branch argues that these statements ought to be suppressed as the fruits of an illegal search; and further, because he had not received his Miranda warnings when he made the statements.

## VI.  APPLICABLE LAW

### A.  Detaining Branch

Both parties agree that a police officer may make a brief investigative stop, if the stop is founded upon a "reasonable suspicion" supported by articulable facts that criminal activity "may be afoot." U.S. v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1 (1968) and U.S. v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995). (See Gov't. Mem. In Opp., p. 18; Branch Mem. of Law, p. 15.)

Branch contends that there was nothing suspicious in his behavior, even to the trained eye of an experienced law enforcement officer.  Common sense suggests

otherwise.  Immediately after the accident, it is undisputed that Branch got out of the vehicle, opened up the trunk, and took out two bags.  But Branch did not remain standing alongside the car, which might support his argument about the search.  The Court finds, instead, that Branch walked away from the car, reversed direction and then walked down the subway stairs, leaving a shopping bag at the top of the subway stairs.  This conduct is so far from the ordinary – not helping the driver who is engaged in a dispute; not moving away from the car if Branch really feared it was going to explode, not calling for fire department assistance if there was a danger of explosion, leaving the scene of an accident – that it raised suspicion and fully justified the stop.  Further, Wells, who was wearing a jacket with police insignia, noted an increase in Branch's gait after Wells made eye contact with him.  Considering all these circumstances, there is more than sufficient suspicion to justify Wells detaining of Branch and asking him to return to the accident site, which Branch had left.

      **B.**    **Bag Search**

As to the search of the bag, again, there is no dispute that abandoned property is not entitled to protection of a privacy interest.  The Fourth Amendment's protection against unreasonable search and seizure does not extend to abandoned property.  "When a person voluntarily abandons property . . . he forfeits any reasonable expectation of privacy that he might have had in the property."  U.S. v. Lee, 916 F.2d 814, 818 (2d Cir. 1990).

Branch maintains that the shopping bag never left his side, and the cases dealing with abandoned property are not relevant.  He argues that the car was next to the subway station, and the shopping bag was proximate to the subway entrance.  It was not

abandoned. As the Court has previously found, based on the corroborated testimony of Wells, which the Court credits, Branch picked up his bags and walked away from the car, before returning and entering the subway. Vasquez and Bennett both testified that they heard radio transmissions indicating that Wells was going into the subway. On a videotaped interview with the Bronx District Attorney, Irizarry recalled that the police asked him why Branch went into the subway. (Irizarry, Tr. 195.) Knowing the contents of the bag, knowing his parole status, and knowing that a police officer was walking after him, it is entirely believable that Branch, knowing the contents of the shopping bag, would have abandoned it as he tried to walk away. As his statements subsequent to his arrest made clear, the last thing Branch wanted was to be in physical possession of a handgun and a pound of marijuana.

The shopping bag was abandoned and the subsequent search was permissible.

## VII.    POST-ARREST STATEMENTS

Branch argues that his post-arrest statements ought to be suppressed because they were the fruits of an illegal search. The Court has ruled that there was no illegal search.

As to the Miranda warnings, none had been given, but the statements for which suppression is sought are not the product of custodial interrogation. Branch's statements were not made to the police, but rather to Irizarry, and overheard by Wells.

There is no basis to suppress these statements volunteered by Branch to Irizarry, and overheard by Wells. See Rhode Island v. Innis, 446 U.S. 291 (1980).

The motion is DENIED in all respects.

Dated: New York, New York
October 2, 2006

SO ORDERED

PAUL A. CROTTY
United States District Judge